UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MICHELE L. SLONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:09-CV-429 CAN |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On September 14, 2009, Plaintiff, Michele L. Slone ("Slone"), filed her complaint with this Court. On April 12, 2010, Slone filed her opening brief asking this Court to enter judgment in her favor or to remand this matter to the Commissioner pursuant to 42 U.S.C. § 405(g). On July 28, 2010, Defendant, Commissioner of Social Security, Michael J. Astrue ("Commissioner"), filed a response in opposition. This Court may issue the following opinion and order pursuant to the consent of the parties and 28 U.S.C. § 636(c).

**I.    PROCEDURE**

On September 17, 2005, Slone filed an application for disability benefits and supplemental security income. Her claim was denied initially on February 6, 2006 and upon reconsideration on June 13, 2006. Slone requested a hearing, which was held on August 5, 2008, before an administrative law judge ("ALJ"). On January 8, 2009, the ALJ issued his opinion denying Slone's claim for disability benefits because he found that in spite of the substantial impairments she suffers, Slone is able to perform a substantial number of jobs that exist in the local economy. Slone immediately filed a request for review of the ALJ's determination, which was denied on June 12, 2009. On September 14, 2009, Slone filed her complaint in this Court

alleging that the ALJ erred in making his determination because he failed to support his opinion with substantial evidence.

## II. ANALYSIS

### A. Facts

At the time of the hearing, Slone was 36 years old. In July 2001, Slone fell from the roof of a barn breaking several bones in her spine, including a burst fracture of one of the vertebrae. As a result, Slone underwent multiple surgeries on her spine, including a fusion of five vertebrae.

On August 14, 2001, Slone went to an emergency room to receive treatment for abdominal pain. Her physician noted that Slone's arms and legs were normal, and a neurological examination showed normal results.

Slone sought treatment for her back pain from Dr. Robert Bigler, a pain management specialist. On May 8, 2003, Dr. Bigler reported that Slone had no significant tenderness to palpation on her back, but Slone experienced increased pain during flexion and extension[1]. Dr. Bigler stated that Slone suffered from chronic lower back pain and failed back syndrome. Dr. Bigler also prescribed medication for pain management. On August 19, 2003, Dr. Bigler performed a follow-up examination and issued a report stating that Slone suffered from chronic lower back pain, failed back syndrome, and chronic radiculopathy[2]. He noted that Slone complained of pain when she walked for prolonged periods, got up and down from a chair, or got of bed, but did improve when performing water aerobics. Dr. Bigler prescribed an increased

---

[1] Flexion is "the act of bending or condition of being bent." Dorland's Illustrated Medical Dictionary 510 (26th ed. 1985). Extension is "a movement which brings the members of a limb into or toward a straight condition." Id. at 477.

[2] Radiculopathy is a "disease of the nerve roots." Id. at 1109.

dosage of medication to manage Slone's pain. In a follow-up visit in September 2003, Dr. Bigler noted that Slone continued to experience pain in her lower back that increased with minimal flexion. In February 2004, when Slone returned to see Dr. Bigler, she complained of disrupted sleep because an increase of pain in her back extending into her hips and legs. Dr. Bigler again stated that Slone suffered from failed back syndrome with chronic pain in her back and legs, and increased the dosage of her pain medication.

On January 25, 2005, Slone received a consultative examination in connection with a prior application for disability benefits. Slone complained of pain radiating from her back into her legs when she was on her feet. She reported that physical therapy and exercises had improved her symptoms. Slone reported no problems writing or getting dressed, but she did experience discomfort while sitting for long periods. She also reported that prolonged standing aggravated her back pain. Upon physical examination, Dr. Drennen, the consultative physician, noted that aside from problems related to her back, Slone performed normally. However, Dr. Drennen did opine that because of Slone's significant history of back and shoulder problems, she would have difficulty using her right arm and be "definitely unable to perform in any heavy occupational endeavor, such as repetitively heavy lifting, pushing or pulling and would be unable to do prolonged standing or walking." Tr. 274.

In September 2005, Dr. Bigler sent letters to Slone's attorney and to a disability services representative at Ivy Tech Community College, where Slone was attending classes. In the letters, Dr. Bigler opined that Slone would be unable to sit, stand, or walk for prolonged periods. Dr. Bigler also noted that Slone would frequently to take rest breaks and change positions. As a result, any job that Slone might obtain would have to accomodate her functional limitations.

3

After an examination in September 2005, Dr. Bigler noted that Slone had difficulty straightening her spine and experienced pain with flexion and extension of her back. Dr. Bigler diagnosed chronic lower back pain resulting from significant spinal injury and recommended that she continue pain treatment. On December 13, 2005, Dr. Bigler again increased the dosage of Slone's pain medication.

In December 2005, Dr. Shuyan Wang, a geriatrician, conducted an internal medicine examination. He determined that Slone could walk normally, was stable in seated and supine positions, and could move her arms and shoulders normally. Dr. Wang did note that Slone experienced pain in her lower back and that she could not perform a full squat due to pain.

On March 25, 2006, Slone visited Dr. Bigler complaining of pain in her back and hip and difficulty sitting. She demonstrated difficulty standing up from a seated position and a limp in her left leg. Dr. Bigler added further medication to treat her back pain. In September 2006, Dr. Bigler opined that Slone would not tolerate prolonged sitting, standing or walking, and thus would not be able to work unless an employer made substantial accommodations for her impairments.

From March 25, 2006 to April 29, 2008, Dr. Bigler noted that Slone suffered from cervical and lumbar spondylosis, and increased neck and back pain with activity. Slone's back pain became more diffuse across the lower back, hips, and legs. Dr. Bigler noted that medications were only minimally beneficial. Slone complained to Dr. Bigler about losing sleep because of intense pain. In April 2008, Dr. Bigler examined Slone and noted that her extension was slightly decreased and painful, her forward flexion was normal with no pain, her leftward and rightward rotation was normal, and her fingers experienced numbness and tingling. Also,

4

Slone was able to stand from a sitting position, and walk normally.

At the hearing held on August 5, 2008, Slone testified that she was unable to work because of pain in her lower back, mid back, hips, and legs that she had experienced since falling off the roof of a barn in 2001. She testified that she was able to walk two blocks before she had to sit down. She also testified that she had difficulty sitting, but could lift a gallon of milk without difficulty. Also, Slone testified that she experienced severe pain daily and suffered migraines.

Also at the hearing, a vocational expert ("VE") testified concerning the availability of jobs for someone with Slone's limitations as determined by the ALJ. The limitations included the ability to lift and carry five pounds frequently and ten pounds occasionally, but the inability to use her right arm above the shoulder, and the inability to climb ladders, ropes and scaffolds. Also, the ALJ determined that Slone would be limited to occasionally climbing ramps, and stairs, and occasionally balancing, stooping, kneeling, crouching, and crawling. The ALJ also determined that Slone must avoid concentrated exposure to extreme cold and heat, wetness, humidity, and vibrations, and any exposure to heights, hazards, and moving machinery. The VE testified that there were 4,600 jobs available to someone with the RFC determined by the ALJ. However, the VE also testified that if Slone needed to take five-minute breaks every hour, that would preclude all work. When the ALJ asked the VE if five one-minute breaks per hour would preclude all work, the VE answered that the jobs would not be precluded.

On January 8, 2009, the ALJ issued a decision in which he determined that despite suffering from severe impairments resulting from a burst fracture in her spine, fibromyalgia, and subluxation of the right shoulder, Slone retained the RFC to perform sedentary work, thus

qualifying for 4,600 jobs in the local economy. The ALJ also determined that Slone was not credible by stating:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonable be expected to cause only some of the claimant's alleged symptoms and resultant functional work-related restrictions; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Tr. 24.

Following the hearing and decision, Slone submitted a questionnaire from Dr. Bigler indicating that Slone would not be able to handle remaining in one position or performing any activity for any extended length of time.

    B.      Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed *de novo*. Haynes, 416 F.3d at 626.

    C.      Slone's Motion for Summary Judgment

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Slone must establish that she

was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: 1) the claimant is presently employed, 2) the claimant has a severe impairment or combination of impairments, 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, 4) the claimant's residual functional capacity leaves him unable to perform his past relevant work, and 5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352. If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

The ALJ found that Slone suffered a fall from the roof of a barn resulting in severe back

pain, fibromyalgia, and subluxation[3] of her right shoulder. The ALJ determined that Slone's impairments or combination of impairments were not listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Slone's RFC allowed her to lift and carry five pounds frequently and ten pounds occasionally. However, the ALJ also found that Slone requires multiple accommodations in order for her to work, including, alternating positions five minutes each hour, avoiding climbing ladders, ropes and scaffolds, and avoiding exposure to extreme cold and heat, wetness, humidity, vibrations, heights, hazards, and moving machinery. As a result, the ALJ determined that Slone could not perform her past relevant work, but could perform jobs that exist in significant numbers in the national economy. Consequently, the ALJ determined that Slone was not disabled.

The only issue this Court must resolve is whether the ALJ improperly assessed Slone's RFC by rejecting Dr. Bigler's opinion. An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006). More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2); Clifford, 227 F.3d at 870. However, a claimant is not entitled to benefits merely because a treating physician labels her as disabled. Dixon, 270 F.3d at 1177. Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. Clifford, 227 F.3d at 870. However, the ALJ must avoid substituting his own opinion for that of the treating physician without relying on medical evidence or authority

---

[3] Subluxation is "an incomplete or partial dislocation." Dorland's Illustrated Medical Dictionary 1264.

in the record. 20 C.F.R. § 404.1527(d)(2); Clifford, 227 F.3d at 870; Rohan v. Chater, 98 F.3d 966, 968 (7th Cir. 1996).

Slone contends that the ALJ erred by not assigning controlling weight to the opinion of her treating physician, Dr. Bigler. The ALJ argues, on the other hand, that he did not reject Dr. Bigler's opinion; he just declined to give it controlling weight. To support his assertion, the ALJ points to the fact that he stated in his opinion that he gave "great weight to the claimant's pain management specialist, Dr. Bigler." Tr. 29. However, the ALJ then stated in his opinion that he gave the most weight to Dr. Hutson, the impartial medical expert, whose opinion was the basis for the ALJ's RFC assessment. The ALJ argues that the opinions of Dr. Bigler and Dr. Hutson are largely in agreement, the only difference being that Dr. Hutson believed that Slone would not require five consecutive minutes, only five non-consecutive minutes of stretching per hour to be able to work.

This Court finds that the ALJ's opinion fails to "build the logical bridge" necessary to support his opinion with substantial evidence. See Haynes, 416 F.3d at 626. First, the ALJ did not explain his preference for Dr. Hutson's opinion over Dr. Bigler's, which was required because Dr. Bigler was a treating physician. See Hofslien v. Barnhart, 439 F.3d at 376–77 (explaining that a treating physician's opinion is entitled to controlling weight until well-supported, contradictory evidence is introduced). Dr. Bigler began treating and examining Slone in 2003. He met with Slone on at least nine occasions between 2003 and the date of the ALJ's opinion in January 2009. Dr. Bigler was much more familiar with Slone because of the numerous physical examinations he performed than Dr. Hutson, who simply reviewed the record. Because more weight is generally given to the opinion of a treating physician, this Court

finds that the ALJ needed to explain why he did not give Dr. Bigler's opinion more weight than Dr. Hutson's. See 20 C.F.R. § 404.1527(d)(2); Clifford, 227 F.3d at 870 (explaining that the ALJ must avoid substituting his own opinion for that of the treating physician without relying on medical evidence or authority in the record).

Also, Dr. Hutson's opinion is partially inconsistent with the evidence on record, and the ALJ failed to explain why Dr. Hutson's opinion was entitled to controlling weight. Dr. Hutson testified that Slone would be able to perform sedentary work if she was able to stand up and stretch for five minutes out of every hour, even if the five minutes were not consecutive. However, as early as September 2005, Dr. Bigler opined that Slone would not be able to work for an hour, stretch, then sit and work for another hour over an eight-hour period. Dr. Bigler also stated that prolonged sitting, standing, or walking would not be tolerated by the claimant. Two other examining doctors, Dr. Drennen and Dr. Wang also indicated that Slone had difficulty performing simple physical tests, like sitting, squatting, and lying down, because of back pain. The ALJ did not offer any supporting evidence in his opinion to contradict the opinions of the three examining doctors. As a result, this Court cannot follow the ALJ's logical path. Therefore, this Court finds that the ALJ erred in giving greater weight to Dr. Hutson's opinion than to Dr. Bigler's.

### III. CONCLUSION

For the above reasons, Slone's request for remand is **GRANTED,** [Doc. No. 16], and this case is **REVERSED** and **REMANDED** to the Commissioner for proceedings consistent with this opinion pursuant to sentence four (4) of 42 U.S.C. § 405(g). The clerk is instructed to term the case.

**SO ORDERED**.

Dated this 27th day of September, 2010.

                                                               S/Christopher A. Nuechterlein
                                                              Christopher A. Nuechterlein
                                                              United States Magistrate Judge